**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| YELENA KAPLAN, | ) | Case No. 1:25-cv-999 |
| | ) | |
| Plaintiff, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | Magistrate Judge Reuben J. Sheperd |
| | ) | |
| DOUGLAS A. COLLINS, Secretary, *et al.*, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**OPINION AND ORDER**

Plaintiff Dr. Yelena Kaplan brings a lawsuit against Defendants Douglas Collins and U.S. Department of Veterans Affairs for judicial review of an administrative employment decision. Defendants move to dismiss the complaint. Plaintiff moves for leave to file a sur-reply and for leave to amend. For the reasons that follow, the Court **DENIES** Plaintiff's motion for leave to file a sur-reply, **GRANTS** Defendants' motion to dismiss, and **DENIES** Plaintiff's motion for leave to amend the complaint.

**STATEMENT OF FACTS**

Taking the facts alleged in the complaint as true and construing them in Plaintiff's favor, as the non-moving party, the complaint alleges the following facts.

Plaintiff Yelena Kaplan is a licensed podiatrist in Ohio at the Cleveland VA Medical Center, U.S. Department of Veterans Affairs (the "Cleveland VA"). (ECF No. 1, ¶ 15, PageID #5.) Before the incidents giving rise to this lawsuit, Dr. Kaplan

worked as a podiatrist for nearly twenty years and received "good to excellent performance reviews" and had "no complaints of care or failure to properly notate and document files." (*Id.*, ¶¶ 10 & 11, PageID #4.)

### A. Surgical Privileges

On May 12, 2023, one week after Dr. Kaplan questioned management "about their responsibilities to employees and expectations of her management," Dr. Kaplan received a notice that her surgical privileges were "summarily suspended." (*Id.*, ¶¶ 12 & 13, PageID #5.) At this point in the factual background, the Court pauses to note that in many places the complaint references Dr. Kaplan's "suspension." (*See, e.g.*, *id.*, ¶¶ 1(a), 12–14, 16, 18, 25 & 26, PageID #2, #5, #6 & #7.) As will become clear, the term "suspension" has particular jurisdictional consequences. Although the notice Dr. Kaplan received on May 12, 2023 is not appended to the pleadings, the complaint references and attaches the agency's determinations. (ECF No. 1-1; ECF No. 1-2.) Those determinations do not use the term "suspension." (ECF No. 1-1, PageID #14; ECF No. 1-2, PageID #18.) More on their wording later. Because they do not use the term "suspension," the Court treats the use of that term throughout the factual allegations of the complaint as a conclusory allegation that asserts a legal conclusion. Accordingly, the Court will avoid the term when discussing the facts.

According to the notice, Dr. Kaplan lost her surgical privileges pending "completion of review and recommendation by the [e]xecutive [c]ommittee of the [m]edical [s]taff." (ECF No. 1, ¶ 18, PageID #6.) Before the notice, Dr. Kaplan's department chief "never addressed" her about her performance, failure to follow

procedures, choice of case outcomes, or timely documentation of notes. (*Id.*, ¶¶ 14 & 16, PageID #5.)

On August 24, 2023, the executive committee proposed removing Dr. Kaplan's forefront, midfoot, and rearfoot surgical privileges and "unanimously adopted" a recommendation to place her on a focused professional practice evaluation. (*Id.*, ¶ 19, PageID #6.) On September 25, 2023, Dr. Kaplan was placed on a ninety-day focused professional practice evaluation "for cause." (*Id.*, ¶ 20, PageID #6.) The "only issues to be monitored were ordering timely imaging studies, ordering timely [lower extremity] vascular examinations, exhausting [c]onservative [c]are, and timely completi[ng] notes and encounters." (*Id.*) Under the professional practice evaluation, Dr. Kaplan's direct supervisor was supposed to meet with her bi-weekly to discuss her progress. (*Id.*, ¶ 21, PageID #6.) However, her supervisor met with her only once during the ninety days. (*Id.*)

In October 2023, Dr. Kaplan, through legal counsel, provided a written response to the medical center director, challenging the executive committee's decision to remove her surgical privileges. (*Id.*, ¶ 22, PageID #6.) On November 15, 2023, the medical center director sent notice to Dr. Kaplan that "the proposal to remove forefront surgery specific and midfoot/rear foot specific procedures privileges and maintain core non-surgical podiatry privilege was upheld" and that Dr. Kaplan had a right to a fair hearing to review the decision-making process. (*Id.*, ¶¶ 23 & 24, PageID #6–7.)

### B. Non-Surgical Privileges

On April 11, 2024, the medical center director notified Dr. Kaplan that her non-surgical privileges were "summarily suspended" pending completion of a review and recommendation by a second executive committee and that if her privileges were revoked, she would be notified of her appeal rights. (*Id.*, ¶ 25, PageID #7.) On May 9, 2024, the medical center director notified Dr. Kaplan that she would not have privileges "pending the outcome" of the executive committee's review. (*Id.*, ¶ 26, PageID #10.) Then, in June 2024, the medical center director sustained the executive committee's decision to revoke Dr. Kaplan's non-surgical privileges because she did not successfully complete a portion of her focused professional practice evaluation. (*Id.*, ¶ 27, PageID #7.)

### C. Fair Hearing

Through legal counsel, Dr. Kaplan timely requested a fair hearing on the revocation of both her surgical and non-surgical privileges. (*Id.*, ¶ 28, PageID #7.) The fair hearing panel notified Dr. Kaplan that "the only issue for the [f]air [h]earing was to determine Dr. Kaplan's successful completion of the [focused professional practice evaluation] and revocation of her non-surgical privileges." (*Id.*, ¶ 29, PageID #8.) Before and at the fair hearing, Dr. Kaplan's counsel confirmed with the panel that "[it] was not convened to review the alleged substandard care of patients that was the basis for the decision to remove Dr. Kaplan's" surgical privileges. (*Id.*, ¶ 31, PageID #8; *see also id.*, ¶ 30, PageID #8.)

On September 10, 2024, the fair hearing was held regarding the "decision to revoke" Dr. Kaplan's non-surgical privileges. (*Id.*, ¶ 33, PageID #8.) The record

shows that the panel "was held to review the November 13, 2023 decision to *deny* [Dr. Kaplan's] surgical privileges and the June 24, 2024 decision to *revoke* [her] non-surgical privileges." (ECF No. 1-1, PageID #14 (emphasis added).) The panel confirmed that, during Dr. Kaplan's focused professional practice evaluation, her supervisor reviewed whether she "timely signed her notes documented within patient files." (ECF No. 1, ¶ 34, PageID #8.) Also, the panel confirmed that Dr. Kaplan completed and passed the other areas of the focused professional practice evaluation, including the ordering of timely imaging studies, ordering timely [lower extremity] vascular examinations, and exhausting conservative care. (*Id.*) While on her focused professional practice evaluation, Dr. Kaplan saw an average of ten to twelve patients per day. (*Id.*, ¶ 35, PageID #9.) However, to determine whether to deny or revoke her surgical privileges, the Cleveland VA "reviewed only a small sample size of forty-five cases" from October 1, 2022 to May 1, 2023. (*Id.*, ¶ 36, PageID #9.) And to determine whether Dr. Kaplan timely completed notes and encounters, her supervisor and others at the Cleveland VA "only reviewed ninety-six cases . . . over a ninety-day period." (*Id.*, ¶ 38, PageID #9.)

In the end, the panel recommended "that the decision to revoke [Dr. Kaplan's] non-surgical privileges and deny [her] surgical privileges be sustained." (ECF No. 1-1, PageID #14.) On October 2, 2024, the fair hearing panel accepted the recommendation and sustained the November 15, 2023 decision to deny Dr. Kaplan's surgical privileges and the June 24, 2024 decision to revoke her non-surgical privileges. (ECF No. 1, ¶ 39, PageID #9; ECF No. 1-1, PageID #14.)

Regarding her surgical privileges, Plaintiff alleges that she was "denied due process" because she "never received a [f]air [h]earing and or [*sic*] a [d]isciplinary [a]ppeals [b]oard as required by law[.]" (ECF No. 1, ¶ 40, PageID #9.) Despite a request from her legal counsel, Dr. Kaplan "was never provided the names of individuals" who investigated her surgical performance. (*Id.*, ¶ 37, PageID #9.) And because the panel made a pre-hearing ruling that the revocation of her surgical privileges was not at issue, Plaintiff alleges that she was "misled into believing that the information was not relevant to the [f]air [h]earing." (*Id.*) Regarding her non-surgical privileges, Plaintiff alleges that the panel "failed to adequately consider the evidence presented[,]" so the revocation of her non-surgical privileges was "arbitrary and capricious, and not supported by substantial evidence." (*Id.*, ¶ 41, PageID #10.)

On October 9, 2024, Dr. Kaplan appealed the fair hearing panel's decision "to revoke and remove her clinical privileges" to the director of the Veteran Integrated Service Network. (*Id.*, ¶¶ 6 & 42, PageID #4 & #10.) On October 23, 2024, the director notified Dr. Kaplan that the panel's decision "to revoke and remove [her] surgical and non-surgical privileges" was "upheld and sustained." (*Id.*, ¶ 43, PageID #10.) It provides, in relevant part:

> This letter is in response to your request for an appeal dated October 9, 2024, regarding the revocation of your privileges which was effective on October 2, 2024.
>
> After careful consideration of the evidence file, including any written responses previously provided by you, as well as the fair hearing file, I have decided to sustain the privileging action, which was effective on October 2, 2024.

(ECF No. 1-2, PageID #18.) Plaintiff alleges that the director upheld a decision that was "arbitrary and capricious" and "violated her right to due process." (ECF No. 1, ¶ 44, PageID #10.) The VA reported this determination to the National Practitioner Database. (*Id.*)

## STATEMENT OF THE CASE

Plaintiff Dr. Yelena Kaplan sued Defendants Douglas Collins and the U.S. Department of Veterans Affairs to seek judicial review of an administrative decision. (ECF No. 1.) In her complaint, Plaintiff alleges that the Cleveland VA violated several bylaws and handbook policies, including VHA Directive 1124 for not properly reporting her complaints of harassment from her supervisor or others, which she alleges was the "catalyst for the aggressive actions taken against her" (*id.*, ¶ 48, PageID #11); VHA Handbook 1050.01 and VHA Handbook 1100.19 for failing to "properly investigate patient safety concerns" (*id.*, ¶ 49, PageID #11); and Section 7462-746 and the Cleveland VA directives and bylaws for denying her due process (*id.*, ¶ 50, PageID #11). Also, Plaintiff alleges that the Cleveland VA "violated the Health Care Quality Improvement Act of 1986 by not treating [her] fairly and putting forth a good faith reasonable effort to attain the facts of the matter during any professional review action." (*Id.*, ¶ 51, PageID #11.)

Further, Plaintiff alleges that the panel's decision violated her due process rights because it considered information that she was not provided and so could not contest (*id.*, ¶¶ 52 & 55, PageID #11–12); because the decision was "not supported by reliable, probative, and substantial evidence" (*id.*, ¶ 54, PageID #12); because she

"was informed" that the panel would not consider the issue of her surgical privileges (*id.*, ¶ 52, PageID #11); and because she received notice that "she would be given an opportunity to defend" the issue of her surgical privileges (*id.*, ¶ 52, PageID #11). Plaintiff alleges that she has "expert witness testimony" to support her clinical decisions in the "small section of cases allege[d] to be outside the standard of care." (*Id.*, ¶ 56, PageID #12.) Plaintiff alleges that the panel did not consider this testimony "solely due to the representations and pre-hearing decision of the [f]air [h]earing [p]anel that the revocation of her surgical privileges was not at issue." (*Id.*) Also, Plaintiff alleges that the decision to sustain the revocation of her non-surgical privileges "did not adequately consider the statistical evidence of practitioners who failed to timely complete patient notes throughout the VA[.]" (*Id.*, ¶ 57, PageID #12.)

Finally, the National Practitioner Database is visible to all medical providers who "would be prospective employers for Dr. Kaplan." (*Id.*, ¶ 45, PageID #10.) Because the Cleveland VA reported the revocation of her surgical and non-surgical privileges to the National Practitioner Database, Plaintiff alleges that her "future ability to gain employment in the practice of podiatry is severely compromised and or unlikely." (*Id.*, ¶ 46, PageID #10.)

Defendants move to dismiss for lack of subject-matter jurisdiction or, alternatively, for failure to state a claim. (ECF No. 13.) After the close of briefing (ECF No. 16; ECF No. 17), Plaintiff moved for leave to file a sur-reply (ECF No. 18). Also, Plaintiff moves for leave to file a first amended complaint. (ECF No. 19.)

## ANALYSIS

Under Rule 12(b)(1), the standard of review "depends on whether the defendant makes a factual or facial challenge to subject-matter jurisdiction." *Solis v. Emery Fed. Credit Union*, 459 F. Supp. 3d 981, 986–87 (S.D. Ohio 2020) (citing *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 920, 330 (6th Cir. 2007)). Unlike a factual attack, which requires the district court to analyze conflicting evidence to determine if jurisdiction exists, a facial attack "challenges the jurisdictional sufficiency of the complaint given those facts." *Id.* at 987 (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)). "When reviewing a facial attack, a district court takes the allegations in the complaint as true, similar to the approach employed in reviewing a Rule 12(b)(6) motion to dismiss." *Id.* (citation omitted).

The Court treats the motion as bringing a facial attack, challenging subject-matter jurisdiction by taking Plaintiff's claims at face value and as true, not by challenging their factual predicate. Therefore, the Court accepts the facts Plaintiff pleads as true and gives no consideration to the materials that the parties attached to their briefs. These include two declarations from a human resources specialist at the Cleveland VA (ECF No. 13-2; ECF No. 17-1) and the transcript of the fair hearing (ECF No. 16-1). In the Court's view, these materials risk making Defendants' jurisdictional attack into a factual one. Therefore, there is no need for Plaintiff's sur-reply, so the Court **DENIES** her motion for leave to file one (ECF No. 18).

Consideration of the two exhibits attached to the complaint and referenced in it do not create the same risk for at least two reasons. First, Section 7462(f)(2)—assuming it applies—provides for judicial review of the administrative record. Those two exhibits represent the official actions complained of. Their consideration directly bears on the legal consequences at issue. Second, practice under Rule 12 generally permits a court to consider such materials without converting the motion to one for summary judgment. *See, e.g.*, *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001) (allowing consideration of matters of public record, orders, items appearing in the record of the case, and exhibits attached to or made part of the complaint on a motion under Rule 12(b)(6)). A facial challenge under Rule 12(b)(1) proceeds in the same manner. *See, e.g.*, *Ohio Nat'l Life Ins.*, 922 F.2d at 325; *Silha v. ACT, Inc.*, 807 F.3d 169, 174 (7th Cir. 2015) (holding that the same Rule 12(b)(6) standard applies to a facial challenge to standing on a Rule 12(b)(1) motion); *Solis*, 459 F. Supp. 3d at 987.

At this stage of the proceedings, the Court construes factual allegations in the light most favorable to the plaintiff, accepts them as true, and draws all reasonable inferences in the plaintiff's favor. *Wilburn v. United States*, 616 F. App'x 848, 852 (6th Cir. 2015). But a pleading must offer more than mere "labels and conclusions," because "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Nor is a court required to accept "[c]onclusory allegations or legal conclusions masquerading as factual allegations[.]"

*Eidson v. Tennessee Dep't of Child.'s Servs.*, 510 F.3d 631, 634 (6th Cir. 2007) (citing *Twombly*, 550 U.S. at 555). Therefore, the Court must distinguish between "well-pled factual allegations," which must be treated as true, and "naked assertions," which need not be. *Iqbal*, 556 U.S. at 678 (cleaned up); *see also, e.g.*, *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 375 (6th Cir. 2011) (determining that because some of the plaintiff's factual allegations were "not well-pleaded," "their conclusory nature 'disentitles them to the presumption of truth'").

## I. Motion to Dismiss

Plaintiff contends that the Cleveland VA improperly revoked her surgical and non-surgical privileges and denied her due process during her subsequent appeal. Defendants move to dismiss, arguing that the Court lacks jurisdiction to review the Cleveland VA's decision because Plaintiff did not suffer a major adverse action or, alternatively, that Plaintiff fails to state a claim because she failed to appeal to the disciplinary appeals board. Defendants argue that the Court lacks jurisdiction because 38 U.S.C. § 7463 governs Dr. Kaplan's grievance process, not 38 U.S.C. § 7462. (ECF No. 13-1, PageID #65–66.)

When adverse personnel action is taken against a Section 7401(1) employee, which in relevant part includes a physician, "the employee shall have the right to appeal the action." 38 U.S.C. § 7461(a). Depending on whether the agency takes a "major adverse action" against the physician, the statute provides two different avenues for appeal:

> (1) If the case involves or includes a question of professional conduct or competence in which a major adverse action was taken, such an appeal shall be made to a Disciplinary Appeals Board under section 7462 of this title.
>
> (2) In any case other than a case described in paragraph (1) that involves or includes a question of professional conduct or competence in which a major adverse action was not taken, such an appeal shall be made through Department grievance procedures under section 7463 of this title.

*Id.* § 7461(b). In short, a physician may appeal a case involving a "major adverse action" to a disciplinary appeals board under Section 7462. Otherwise, an appeal goes through the agency's grievance process under Section 7463. Which process governs matters because a physician who is "adversely affected by a final order or decision of a Disciplinary Appeals Board (as reviewed by the Secretary) may obtain judicial review of the order or decision." 38 U.S.C. § 7462(f)(1). In contrast, the "Disciplinary Appeals Boards shall not have jurisdiction to review" matters not involving a major adverse action under Section 7461(b)(2)—meaning that a physician may seek only internal review. 38 U.S.C. § 7463(a) & (d).

Whether Dr. Kaplan suffered a major adverse action is dispositive of whether she is subject to Section 7462 (major adverse actions involving professional conduct or competence) or to Section 7463 (non-major adverse actions involving professional conduct or competence) and, subsequently, whether the Court has jurisdiction over this case. As a result, which appeals process applies determines the outcome of the government's motion. *See Fligiel v. Samson*, 440 F.3d 747, 752 (6th Cir. 2006) ("[T]here is no provision for judicial review conferred by § 7463, in contrast to

§ 7462."). Determining whether Section 7461(b)(1) or (2), and by extension Section 7462 or Section 7463, governs involves two separate issues.

### I.A. Professional Conduct or Competence

"[T]he VA does not dispute that the decision to revoke Plaintiff's privileges was taken because of a question of her professional conduct and competence." (ECF No. 17, PageID #132.) Therefore, the question becomes whether revocation of Dr. Kaplan's surgical and non-surgical privileges was a major adverse action.

### I.B. Major Adverse Action

Defendants argue that Dr. Kaplan did not suffer a major adverse action, such that Section 7463 applies, and Plaintiff may seek only internal review. (ECF No. 13-1, PageID #66.) Plaintiff argues that she suffered a major adverse action. (ECF No. 16, PageID #85.) A major adverse action has the following statutory definition:

> (2) A major adverse action is an adverse action which includes any of the following:
>
> (A) Suspension.
>
> (B) Transfer.
>
> (C) Reduction in grade.
>
> (D) Reduction in basic pay.
>
> (E) Discharge.

38 U.S.C. § 7461(c)(2). Defendants argue that Plaintiff did not suffer a major adverse action because a *revocation* of surgical and non-surgical privileges is "not included within the definition of major adverse action." (ECF No. 13-1, PageID #66.) In her

argument, Plaintiff claims that she suffered two particular major adverse actions identified in Section 7461(c)(2), which the Court addresses in turn.

**I.B.1. Suspension**

First, Plaintiff maintains that she suffered a major adverse action because she was suspended. In their arguments over the term "suspension," the parties debate application of the VA's handbook, which is referenced in the complaint. (ECF No. 1, ¶ 49, PageID #11.) In this post-*Chevron* era, *see Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 412 (2024), the handbook does not matter for purposes of determining whether Congress authorized judicial review of the agency action in this case in Section 7462. Through its own policy statements or other action, the VA cannot change the meaning of the words in the statute, and "[i]t is emphatically the province and duty of the judicial department to say what the law is." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803).[1]

The statute does not define the term "suspension." Therefore, the Court looks to its ordinary meaning at the time of enactment. As relevant here, one standard dictionary definition treats a "suspension" as "the state or period of being suspended: such as (a) temporary removal (as from office or privileges)." Merriam-Webster.com

[1] Under the VA handbook, the question is fairly straightforward. The VA handbook defines "suspension" as the "involuntary placement of an employee, for disciplinary reasons, in a non-duty, non-pay status for a temporary period of time." Dep't of Veterans Affs., VA Directive 5021, App. A, Section A, 3(e) (Apr. 15, 2002). The governing handbook at the time of the events at issue uses the same definition. Dep't of Veterans Affs., VA Handbook 5021, App. A, Section A., 3(l) (Dec. 20, 2017). Even construing the complaint in Plaintiff's favor, Plaintiff fails to allege that she was placed in a non-pay status. Under the plain language of the policy in the handbook, then, Plaintiff fails to plead that she was suspended.

Dictionary, *Suspension* (accessed Aug. 14, 2026). Another defines it as the "action of debarring or state of being debarred, esp. for a time, *from* a function or privilege; temporary deprivation of one's office or position." Oxford English Dictionary, *Suspension* (2d ed. 1989). And Black's Law Dictionary defines "suspension" as "the act of temporarily delaying, interrupting, or terminating something," such as business operations or the operation of a statute. Black's Law Dictionary, *Suspension* (12th ed. 2024). Also, it means the "temporary deprivation of a person's powers or privileges, esp. of office or profession" or the "temporary withdrawal from employment, as distinguished from permanent severance." *Id.* (third and fourth meanings).

Under these common definitions, the statutory term signifies a temporary loss of privileges, as opposed to a permanent change in status, such as through a discharge or reduction in grade or pay. Because the statute makes suspension a major adverse action, Plaintiff uses that term throughout her complaint. But the actual documents evidencing the VA's action do not. (ECF No. 1-1; ECF No. 1-2.) Instead, they "revoked" Dr. Kaplan's surgical and non-surgical privileges. (*See* ECF No. 1-1, PageID #14; ECF No. 1-2, PageID #18.) Unlike a suspension, a temporary loss of privileges or status, revocation is permanent. *See, e.g.*, Oxford English Dictionary, *Revoke* (2d ed. 1989) ("To annul, repeal, rescind, cancel.); Black's Law Dictionary, *Revoke* (12th ed. 2024) ("To annul or make void by taking back or recalling; to cancel, rescind, repeal, or reverse."). Plaintiff's conclusory assertions in her complaint cannot change what happened or their legal consequences. Nor does the Court credit them

under basic principles under Rule 12. Because the agency revoked Dr. Kaplan's privileges, an action that is not temporary, she did not suffer a suspension as a matter of law. Therefore, she did not experience a major adverse action within the meaning of 38 U.S.C. § 7461(c)(2)(A), and the Court may not exercise jurisdiction under 38 U.S.C. § 7462(f)(1).

**I.A.2. Transfer**

Second, Plaintiff maintains that she suffered a major adverse action because she was transferred. Again, the parties argue the meaning of a transfer under the VA handbook.[2] Again, the statute does not define the term. In common parlance, a "transfer" means "removal from one place . . . to another." Oxford English Dictionary, *Transfer* (2d ed. 1989); *see also* Black's Law Dictionary, *Transfer* (12th ed. 2024) (defining the verb as "[t]o convey or remove from one place . . . to another").

Plaintiff argues that she was "transferred from Youngstown to the Cleveland VA." (ECF No. 16, PageID #85.) But there is no allegation in the complaint that Dr. Kaplan was transferred. In fact, the word "transfer" does not appear in the complaint. (*See generally* ECF No. 1.) Plaintiff argues a transfer for the first time in opposing Defendants' motion to dismiss. (ECF No. 16, PageID #85.) As Defendants point out, plaintiffs "cannot amend their complaint in an opposition brief or ask the

---

[2] The VA defines a transfer as "the involuntary movement of an employee from one VA facility to another (under separate managerial authority) based on conduct or performance and without a break in service." Dep't of Veterans Affs., VA Directive 5021, App. A, Section A, 3(f) (Apr. 15, 2002); *see also* Dep't of Veterans Affs., VA Handbook 5021, App. A, Section A., 3(m) (Dec. 20, 2017) (using the same definition). Under this definition, the result is the same.

court to consider new allegations (or evidence) not contained in the complaint." (ECF No. 17, PageID #132).

Construing Plaintiff's allegations about the revocation of privileges and reassignment to non-clinical administrative work as amounting to a transfer does not bring her grievance within the statutory definition of a transfer that would confer jurisdiction on the federal courts. Even under this reading, no allegation contends that Dr. Kaplan was moved from one place to another. Nor does the complaint, or either document attached to it, allege that Dr. Kaplan was reassigned to non-clinical administrative work. Still, the pleadings do not allege that Dr. Kaplan was moved. For these reasons, the pleadings fail to show a transfer that would bring a major adverse action within the power of the federal courts to review.

**I.A.3. Adverse Action "Including" the Ones Listed**

Plaintiff argues that "[t]he VA's suspension and revocation of [her] surgical and non-surgical privileges, her transfer from clinical duties to administrative work, and the resulting report to the National Practitioner Data Bank collectively constitute a major adverse action[.]" (ECF No. 16, PageID #81; *see also id.*, PageID #83 (arguing that "the VA's actions—including revocation of privileges, reassignment to administrative duty, and [National Practitioner Data Bank] reporting—constitute a major adverse action.").) In essence, Plaintiff predicates her argument on the work the word "includes" does in the statute, which might expand the scope of major adverse actions subject to judicial review beyond strictly those listed on the face of the statute.

Because of their role under the Constitution as limited tribunals, it is well-established that statutes conferring jurisdiction on the federal courts are narrowly construed. *See, e.g.*, *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108–09 (1941). "[W]hen Congress establishes jurisdictional statutes, they should be confined to the precise limits as defined. *Dist. 2, Marine Eng'rs Beneficial Ass'n, AFL-CIO v. Amoco Oil Co.*, 554 F.2d 774, 779 (6th Cir. 1977) (Siler, J., dissenting) (citing *Victory Carriers, Inc. v. Law*, 404 U.S. 202, 204, 216 (1971)). Although Congress defined "major adverse actions" as "including" particular actions, the federal courts cannot define the reach of their own jurisdiction, and Congress may not delegate that task to the courts. The better reading of the statute, then, limits major adverse actions to the list that Congress provided, which the VA may not evade through use of labels or other formalities divorced from the substantive actions over which the statute confers judicial review. By focusing on the effects of the VA's actions on Dr. Kaplan, Plaintiff anticipates as much.

In the end, the agency carefully navigated the statutory line between major adverse actions subject to judicial review after a final decision by a disciplinary appeal board and unreviewable internal grievances. This is so even looking behind the labels used and taking the consequences for Dr. Kaplan of the agency's actions together. Plaintiff's complaint fails to make a showing that Dr. Kaplan suffered a major adverse action within the meaning of the statute. Therefore, the Court lacks jurisdiction over this action.

## II. Leave to Amend

After the close of briefing on Defendants' motion to dismiss, Plaintiff filed a motion for leave to amend the complaint, which Defendants oppose on futility grounds. (Had Plaintiff so desired, she could have amended as of right under Rule 15 within 21 days of serving the complaint or within 21 days of being served with, whichever is earlier, Defendants' responsive pleading or motion to dismiss. Fed. R. Civ. P. 15.) "In all other cases," the plaintiff may amend the complaint "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2).

Rule 15 directs courts to give leave to amend "freely . . . when justice so requires." Fed. R. Civ. P. 15(a)(2); *Doe v. Michigan State Univ.*, 989 F.3d 418, 426 (6th Cir. 2021). Absent undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies in previous amendments, undue prejudice, or futility, courts should freely grant leave to amend. *Doe v. College of Wooster*, 243 F. Supp. 3d 875, 884–85 (N.D. Ohio 2017) (citing *Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 458 (6th Cir. 2013)). Ultimately, whether to grant or deny leave to amend rests within the discretion of the district court. *General Electric Co. v. Sargent & Lundy*, 916 F.2d 1119, 1130 (6th Cir.1990). A proposed amendment is futile unless it can survive a motion to dismiss. *Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 (6th Cir. 2005).

In the proposed amended complaint (ECF No. 19-1), Plaintiff makes the conclusory allegation that Defendants characterize Dr. Kaplan's "reassignment as a 'detail'" but "in substance and effect[,] it constituted a constructive transfer and a constructive suspension[.]" (*Id.*, ¶ 36, PageID #158.) But even with the benefit of full briefing on the motion to dismiss, Plaintiff fails to include any allegations about a

suspension or transfer, within the meaning of the statute, that might change the outcome. While she alleges that "[t]he revocation of all clinical privileges, combined with [her] involuntary reassignment to non-clinical administrative work, functions as a suspension from professional duties" (*id.*, ¶¶ 34 & 36, PageID #158), she "remained nominally employed" and does not allege that she went unpaid (*id.*, ¶ 38, PageID #158–59). Though Plaintiff alleges that "her continued employment was functionally illusory" (*id.*, ¶ 38, PageID #159), she does not allege that she suffered a reduction in grade or pay.

Similarly, Plaintiff argues that her allegations "describe a functional deprivation of professional duties that plausibly constitutes . . . a constructive transfer . . . regardless of how the agency chose to label the action." (ECF No. 18, PageID #145.) But the proposed amended complaint contains no allegation that the revocation of privileges or other actions of which Dr. Kaplan complains are temporary. Nor does it allege a transfer from one location to another. For example, the word "Youngstown" does not even appear in the proposed amended complaint. (*See generally* ECF No. 19-1.) Because the proposed amended complaint fails to show that Dr. Kaplan suffered a major adverse action, amendment is futile, and the Court lacks jurisdiction. 38 U.S.C. § 7463(a) & (d); *id.* § 7462(f).

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's motion to file a sur-reply (ECF No. 18), **GRANTS** Defendants' motion to dismiss (ECF No. 13), and **DENIES** Plaintiff's motion for leave to file an amended complaint (ECF No. 19).

**SO ORDERED.**

Dated: August 20, 2026

J. Philip Calabrese
United States District Judge
Northern District of Ohio